## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GENE CHRISTIANSEN

     Plaintiff,

v.                                                                     Case No. 14-cv-467 SCY/KBM

RUTHERFORD WATER ASSOCIATION *et al.*

     Defendants.

## <u>ORDER</u>

THIS MATTER is before the Court on Defendants Donna Agnew, Timothy Andrews, Lonnie Hennigh, Kathy Larson, and Mike Rife's Motion to Dismiss. *Doc. 6.* Having reviewed Defendants' Motion, and being fully advised, the Court finds that the Motion should be **GRANTED** in part and **DENIED** in part**.**

## I.    BACKGROUND

At issue in this case is a membership in a mutual domestic water association located in Rio Arriba County, New Mexico. *See generally doc. 1.*[1] Under the New Mexico Sanitary Projects Act ("SPA"), NMSA 1978 § 3-29-1 *et seq.*, such associations, are treated as subdivisions of the state, and are authorized to receive public funds for "acquisition, construction and improvement of water supply, reuse, storm drainage and wastewater facilities" in rural New Mexico communities that are not served by public utilities. NMSA 1978 § 3-29-3; *El Vadito de los Cerrillos Water Ass'n v. New Mexico Public Service Com'n*, 858 P.2d 1263, 1270 (1993). Under the SPA, any person in the association's community, including those who did not

---

[1] For the purposes of this order, the Court accepts all of Plaintiff's factual allegations as true.

originally participate in an association project[2] may become a member of the association "upon payment to the association of a reasonable fee as determined by the board of directors and the department." NMSA 1978 § 3-29-11.

In 2001, Plaintiff Gene Christiansen purchased 26 acres of land in Rio Arriba County (identified in the Complaint as the Highway 95 property) within the domain of the Rutherford Water Association (RWA). *Doc. 1* ¶ 8-9.  To serve this land, by 2002 he acquired three memberships in the RWA, out of a total of 100 available to serve that community.  *Id.* ¶¶ 10-12.

Then, at some point prior to 2007, Plaintiff drilled a well on his property, rendering two of the three memberships unnecessary.  *Id.* ¶ 15.  In 2007, Plaintiff successfully transferred some portion of his property, along with one membership in the RWA, to a third party not involved in the instant action.  *Id.* ¶ 16.

In 2009, Roger Vinyard ("Vinyard") purchased a property within the RWA (identified in the Complaint as Lot H-1), but was unable to buy a membership to serve that land because each of the 100 memberships in the RWA were already assigned.  *Id.* ¶ 17.  Plaintiff, upon learning of Vinyard's situation, offered to sell Vinyard his remaining unused membership.  *Id.* ¶ 18.  At the time, under the RWA by-laws, the RWA had a right of first refusal to purchase the membership at issue.  *Id.* ¶¶ 20, 22.  The by-laws did not otherwise prohibit transfers of memberships so long as the transferee was eligible for membership in the RWA.  *Id.* ¶ 21.  Plaintiff alleges that during this time, "the transfer of memberships among private individuals [was] a commonplace occurrence. . .and was actively encouraged by the Board" because there were no more memberships available. *Id.* ¶ 41.

---

[2] "Project" is defined under the SPA as a "water supply or reuse, storm drainage or wastewater facility owned, constructed or operated by an association." NMSA 1978 § 3-29-2(F).

Plaintiff and Vinyard contacted the then-president of the RWA, Kathy Galbraith ("Galbraith") and notified her of Vinyard's purchase of the membership. *Id.* ¶¶ 18-20, 23. On March 27, 2010, Plaintiff surrendered the membership certificate to Galbraith in order to facilitate the transfer, and Vinyard assumed payment of all costs and fees associated with that membership. *Id.* ¶¶ 20, 25. In 2011 and 2012 Vinyard repeatedly requested that the RWA install a water meter on Lot H-1 to serve the membership, but the RWA refused to install one. *Id.* ¶ 24.

In 2012, the RWA increased the number of available memberships to 110 and amended its by-laws to restrict transfers of memberships such that memberships could not be separated from the properties they served. *Id.* ¶¶ 26-27. Then, in early 2013, counsel for the RWA, Mary Humphrey ("Humphrey") contacted both Plaintiff and Vinyard and informed them that Plaintiff did not, in 2010, have the right to transfer his membership to Vinyard. *Id.* ¶ 28. Humphrey further informed Plaintiff and Vinyard that since the transfer was invalid, the RWA would refund Vinyard's payments to the Association and allow him to apply for one of the ten newly created memberships. *Id.* At this point in time, both Vinyard and Plaintiff stopped receiving bills for services associated with this membership. *Id.* ¶ 39. Plaintiff alleges other transfers of memberships took place in 2010, but only this transfer was singled out for scrutiny. *Id.* ¶¶ 42-43.

Pursuant to a meeting with the RWA's Board of Directors on February 23, 2013, Plaintiff rescinded the transfer and agreed to pay all relevant fees for the period that the membership had been assumed by Vinyard, while confirming with the Board on February 26, 2013 that he, Plaintiff, would be allowed to attach the membership to any property he owned within the RWA's service area. *Id.* ¶¶ 29-30.

At some point between February 26, 2013 and March 7, 2013, Vinyard conveyed Lot H-1 to Plaintiff. *Id.* ¶ 31.  On March 7, 2013, Plaintiff presented the warranty deed documenting Vinyard's conveyance of Lot H-1 to Plaintiff to Galbraith.  *Id.* ¶ 32. He requested that his second membership be transferred from the Highway 95 property to the Lot H-1 property, but the RWA refused to transfer the membership.  *Id.* ¶ 32.  At the same time, Galbraith requested that conveyance be rescinded, and informed Plaintiff that the RWA would install a water meter on Lot H-1.  *Id.* ¶ 33.  At some point thereafter, Plaintiff conveyed Lot H-1 back to Vinyard.  *Id.* On April 19, 2013, Galbraith represented to Vinyard that the RWA would install a water meter on Lot H-1, and the meter was installed in June 2013, but not activated.  *Id.* ¶ 35.

On October 30, 2013, Plaintiff received a letter from Humphrey indicating that his membership would not be transferred to Lot H-1, and on February 28, 2014, the RWA terminated the membership.  *Id.* ¶¶ 36-37.

In this action, Plaintiff alleges that when the individual Board members cancelled his membership, they violated his rights to property, due process, and equal protection under the federal constitution.  *Id.* ¶¶ 47-65.[3]  He also asserts estoppel, pointing to the Board member's representations that he could transfer his membership to properties he owned within the RWA's service area.  *Id.* ¶¶ 73-86.  The individual Board members move to dismiss Plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6), because, they claim, the Board members are immune from suit under state and federal law, or in the alternative, because Plaintiff fails to state a claim on which this Court may grant relief.

## II.   STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(6)

---

[3] Although Plaintiff's Complaint also appears to plead state law constitutional claims against the individual Defendants, in his responsive briefing Plaintiff explicitly asserts that "the only claims raised against the individual Board members are brought under the Civil Rights Act, 42 U.S.C. Sec. 1983." *Doc. 12* at 7.

4

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief.[4]  Under this Rule, a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976) (citing *Jones v. Hopper*, 410 F.2d 1323 (10th Cir. 1969)).  While a complaint does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Once the court accepts as true well-pleaded factual allegations, it must then consider whether "they plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  The court's consideration, therefore, is limited to determining whether the complaint states a legally sufficient claim upon which the court can grant relief.  *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of law or the asserted application of law to the alleged facts.  *See Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).  Nor is the Court required to accept as true legal conclusions that are presented as factual allegations.  *See Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000).  The Court must, however, view a plaintiff's allegations in the light most favorable to her. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

**B.      Qualified Immunity**

---

[4] Plaintiff contends that Defendants attempt to add new facts to the record beyond the Complaint in their motion to dismiss.  As a 12(b)(6) motion only tests the sufficiency of a complaint itself, the Court will not consider any facts beyond those presented in the Complaint. For the same reason, the Court at this stage declines to consider any of the documents Plaintiff has attached both to the Complaint and the responsive briefing for this motion.

Qualified immunity protects public officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Choate v. Lemmings*, 294 F. App'x 386, 391 (10th Cir. 2008) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004)). To overcome the defense, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time" of the violation. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

## III.   PLAINTIFF'S FEDERAL CLAIMS

As an initial matter the Court notes that Plaintiff appears to have pled a stand-alone 42 U.S.C. § 1983 claim as Count II, wherein he mentions a Fifth Amendment takings claim in addition to federal constitutional due process and equal protection claims (Counts III and IV respectively). Defendants are correct, and Plaintiff concedes that, § 1983 is not in and of itself a cause of action. *Doc. 6* at 9-10, *doc. 12* at 9; *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.") The Court reads Plaintiff's Complaint, therefore, as pleading three § 1983 claims, for violations of Plaintiff's Fifth Amendment right against takings without just compensation and his Fourteenth Amendment rights to procedural due process and for equal protection.

With regard to each of Plaintiff's federal constitutional claims, Defendants assert first that they are entitled to qualified immunity, and in addition, that Plaintiff has failed to plead each cause of action with the requisite specificity against the Board members named in this action.

As the Tenth Circuit has pointed out:

> "Often, § 1983. . .liability and the defense of qualified immunity travel hand-in-hand, and when they do, we consider their substantive components together. Thus, although the requirement of personal participation. . . is a component of liability under § 1983. . .we also incorporate it into our qualified-immunity analysis, where we ask whether a clearly established constitutional right has been violated. . . To make out viable § 1983. . .claims and to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant. . .caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind."

*Pahls v. Thomas*, 718 F.3d 1210, 1227-28 (10th Cir. 2013).  With that analytical framework in place, the Court finds that Plaintiff has pled his due process claim with the requisite specificity to survive Defendants' motion and defeat their assertion of qualified immunity while his takings and equal protection claims fail for the reasons set forth below.

**A.      Plaintiff's Due Process Claim**

In considering Plaintiff's Fourteenth Amendment procedural due process claim, the Court must first determine whether Plaintiff has a protected property interest in the RWA membership. *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999)(quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)). It must then consider whether the individual Board members afforded Plaintiff the appropriate amount of process when they terminated the membership.  *Id.*

The New Mexico Supreme Court explained in *El Vadito*, "[t]he purpose of the SPA is to improve the public health of the people of New Mexico by establishing sanitary domestic water

facilities to supply water to rural unincorporated communities, which otherwise would likely have no means to procure usable water." 858 P.2d at 1270.  Therefore, while under New Mexico law the RWA, as a mutual domestic water consumer association, is not technically a public utility (see *El Vadito*, 858 P.2d at 1269), it serves the purpose of a public water utility by providing water within its service area.  The United States Supreme Court has explained, within the context of procedural due process, access to water from a public utility is a protected property right for which some process is owed.  *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 16-18 (1978)("Utility service is a necessity of modern life; indeed, the discontinuance of water. . .for even short periods of time may threaten health and safety.") Plaintiff's membership in the RWA, which was the vehicle for him to receive water to a portion of the Highway 95 property, therefore appears to be a clearly established property interest protected by Fourteenth Amendment due process.  *Doc. 1 ¶* 91; *doc. 12* at 15 ("Membership. . .confers the privilege of receiving water service through the only existing water utility system in the area.") In addition, Plaintiff pleads that he was afforded no process in the termination of his membership.  Instead, Defendants simply cancelled it in spite of the fact that the SPA itself requires that connections may only be terminated "after notice is given," and only after determining a connection is "unauthorized", "illegal", or for which there are payments owed. *Doc. 1 ¶¶* 37, 42-43; NMSA 1978 § 3-29-6(D).[5]  Because the Court must take Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently pled a violation of his due process.  Defendants' request for qualified immunity as to this Count is denied.

---

[5] The Court notes that Plaintiff does not specifically allege, by name, that each of the Board members participated in the termination, but rather that the Board terminated his membership.  *See, e.g. doc. 1 ¶* 70.  However, the Court must draw all reasonable inferences in favor of Plaintiff and will therefore infer that that named individual Board members in this action were Board members from 2010 to the present who participated in that action.  This inference is assisted by the fact that the individual Defendants never deny that they were all Board members during the relevant period.

**B.**     **Plaintiff Cannot Bring His Takings Claim Against the Individual Board Members**

Plaintiff asserts that the cancellation of his membership was a taking under the Fifth Amendment for which he is entitled to compensation.[6]  The Fifth Amendment Takings Clause provides that the government cannot seize private property for public use without providing compensation. U.S. Cons. amend. V;  *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321 (2002)("[the] plain language [of the Fifth Amendment] requires the payment of compensation whenever the *government* acquires private property for a public purpose")(emphasis added).  The proper defendant to this claim is the entity exercising state authority, *i.e.* the Association, with the individual Board members merely serving as its agents in effecting the alleged taking.  *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 21–22 (1940)(if agents of the government accomplish takings of private property, "[t]he action of the agent is the act of the government" and it is the government that is liable for suit, not the agent.)  Any individual liability arising from an alleged improper seizure of Plaintiff's property sounds in state tort law, not the Fifth Amendment.   Plaintiff's Fifth Amendment Takings claim against the individual Defendants is dismissed.

**C.**     **Plaintiff Fails to Plead an Equal Protection Violation with Specificity**

Plaintiff, although he does not explicitly state it, pleads a class-of-one equal protection claim by asserting that the individual Board members singled him out for differential treatment when they denied him the ability to transfer his membership to Vinyard.  *See, e.g., Shifrin v. Toll*, 483 Fed. App'x 446, 449 (10th Cir. 2012)(upholding the district court's treatment of plaintiff's

---

[6] The plain language of Plaintiff's Complaint appears to assert a Fifth Amendment due process claim as well. *See doc. 1* ¶ 52. But since Plaintiff does not assert a federal government action, the Court will assume that he only means to bring a Fifth Amendment Takings claim here and relies on the Fourteenth Amendment to assert a due process claim against the state.  *See Malloy v. Hogan*, 378 U.S. 1, 26 (1964)("Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth.").

claim as a class-of-one where "[plaintiff did] not claim that defendants denied his application based on his sex, race, religion, or membership in another cognizable group. Rather, he claims that they singled him out for adverse treatment."). Equal protection claims are generally designed to attack governmental actions that disproportionately burden classes of individuals. However, in 2000 the Supreme Court recognized that a single person may be subject to individualized governmental discrimination in violation of her Fourteenth Amendment rights. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In *Olech*, the Court found that the plaintiff had successfully pled such a violation by alleging that the defendant arbitrarily and capriciously required her grant a 33 foot easement, rather than the 15 foot easement required by similarly situated property owners, on her property in order to receive access to the municipal water supply. *Id.* at 565.

More recently, the Tenth Circuit has addressed the pleading standards for class-of-one actions in the wake of *Twombly* and *Iqbal*. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011). Noting recent decisions in other Circuits, the Court explained that "[after] *Iqbal*, a generalized pleading in the mold of *Olech* is no longer sufficient to state a class-of-one claim" and cited with approval its own prior unpublished decision to dismiss on the basis that "[plaintiff] has failed to allege, as it must, the identity or characteristics of other, similarly situated [individuals] and how those similarly situated [individuals] were treated differently." *Id.* at 1219 n.3. The Court went on to dismiss the plaintiff's class-of-one allegation of differential enforcement of nuisance laws because he only alleged "that other, unidentified properties [with] 'comparable' or 'similar' conditions" were not subject to enforcement, and failed to provide "specific facts plausibly suggesting the conditions on the properties and the properties

themselves are similar in all material respects." *Id.* at 1220; *accord. Shifrin*, 483 Fed. App'x at 450.

Like the plaintiff in *Kansas Penn*, Plaintiff fails to set forth specific facts to demonstrate the similarity of his situation to that of other members in the RWA who were permitted to transfer their members.  He generally alleges that the transfer of memberships was quotidian practice encouraged by the Board, that "other private transfers of memberships occurred in the same timeframe [as Plaintiff's transfer] but have not been singled out for negative action or termination by the Association" and that the RWA's actions were arbitrary and capricious. *Doc. 1* ¶¶ 41-43.  At no point does Plaintiff provide specific examples of other members who were both similarly situated and permitted to transfer their memberships with the approval of Defendants.   This pleading defect is fatal to Plaintiff's equal protection cause of action, and it is dismissed.

## IV.   PLAINTIFF'S EQUITABLE ESTOPPEL CLAIM

Plaintiff asserts that the individual Defendants should be equitably estopped from asserting the invalidity of the transfer of the membership, as well as his inability to attach it to any piece of land he owed, on the basis that they affirmatively represented to him that he could do both.  Unfortunately, as with Plaintiff's takings claim, he misunderstands against whom he can plead this cause of action.  What Plaintiff seeks as relief is the equitable remedy of disgorgement, namely reinstatement of his membership and the free ability to transfer it, or in the alternative, for the Court to enjoin the Association from terminating his membership. *Doc. 1* at 16-17.  These are equitable remedies only the Association can provide. *See, e.g.*, *Tome Land & Imp. Co. v. Silva*, 494 P.2d 962, 967 (1972)(stockholders plead estoppel by conduct against corporation after the board of the corporation adjusted the book value of the corporation's stock

and then tried to deny that the stock was worth the new valuation).  Plaintiff's assertion of estoppel against the individual Defendants is also dismissed.

## V.   CONCLUSION

For the forgoing reasons, the Court finds that Plaintiff has sufficiently pled his Fourteenth Amendment due process claim against the individual Defendants.  His Fifth Amendment takings, and Fourteenth Amendment equal protection, claims against the individual Defendants are dismissed WITH PREJUDICE.  Further, Plaintiff's equitable estoppel claim against the individual Defendants is dismissed WITH PREJUDCE.

**IT IS SO ORDERED.**

/s/ Steven C. Yarbrough
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE